## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **NANCY KARPEN**, | |
| Plaintiff, | Case No. 21-5504 |
| v. | **JURY TRIAL DEMANDED** |
| **DENIS McDONOUGH**, Secretary of the United States Department of Veterans Affairs | |
| Defendant. | |

### COMPLAINT FOR EQUITABLE AND
### MONETARY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Nancy Karpen ("Karpen") by and through counsel, files this civil complaint and demand for jury trial against the Defendant, Denis McDonough, Secretary of the United States Department of Veterans Affairs ("VA" or "Agency") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., ("Title VII") for violations of discrimination based on race and retaliation for prior protected activity, as well as the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq*., ("ADEA") for violations of discrimination based on age and retaliation for prior protected activity.

### **INTRODUCTION**

1.     Plaintiff Nancy Karpen("Karpen") is a Caucasian female who resides in Chicago, IL.

2.     Karpen was born in 1957.

3.     Karpen is a Registered Nurse ("RN").

4.     Karpen became licensed as a Nurse Practitioner ("NP") in 2017.

5.     In 2009, Karpen began working for the Jesse Brown VA Medical Center ("JBVAMC"), located in Chicago, IL, as an RN.

6.     From 2011 to 2013, Karpen received performance ratings of "highly satisfactory."

7.     Beginning in or about 2014, Karpen was subjected to discrimination based on race, age, and retaliation for prior protected activity.

8.     Specifically, between 2014 and 2018, Karpen applied to thirteen (13) different job postings within the VA and was not selected for any.

9.     On January 17, 2020, Karpen filed an appeal with the Equal Employment Opportunity Commission ("EEOC") Office of Federal Operations ("OFO"), OFO Appeal No. 2020002377 (EEOC Case No. 440-2017-00173X; FAD No. 440-2017-00173X). Karpen received the OFO decision on July 19, 2021.

10.     As described more fully herein, Karpen brings the instant action against the VA for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*

## PARTIES

11.     Plaintiff Nancy Karpen is domiciled in Chicago, IL and is employed by the JBVAMC, located in Chicago, IL.

12.     Defendant VA is a federal government agency that among other things, provides healthcare services to U.S. military veterans.

13.     The VA headquarters is located 810 Vermont Ave NW, Washington, DC 20420.

14.     The VA is an "employer" and an "employing office" as defined by 42 U.S.C. § 2000e and is a proper defendant in this action under 2 U.S.C. 1408(b).

## JURISIDCTION AND VENUE

15.     This Court has jurisdiction over this action generally pursuant to 28 U.S.C. § 1331 because it asserts claims that arise under the laws of the United States, specifically 42 U.S.C. § 2000e, *et seq*., and 29 U.S.C. § 621, *et seq*.,

16.     Karpen timely initiated contacts with a Counselor from the VA Office of Resolution Management ("ORM"), the VA's Equal Employment Opportunity ("EEO") office, regarding her claims from 2014 through 2019.

17.     After receiving a Notice of Right to File a Formal EEO Complaint of Discrimination, Karpen filed timely complaints of discrimination with the VA ORM.

    a.     On January 26, 2016, Karpen filed her formal EEO complaint for Agency No. 200J-0537-2016100990.

    b.     On June 19, 2017, Karpen filed her formal EEO Complaint for Agency No. 200J-0537-2017102369.

    c.     On August 7, 2017, Karpen filed her formal EEO complaint for Agency No. 200J-0537-2017104043.

    d.     On August 21, 2017, the Agency consolidated Agency Nos. 200J-0537-2017102369 and 200J-0537-2017104043.

    e.     On January 23, 2018, Karpen filed her formal EEO complaint for Agency No. 200J-0537-2018101212.

18.     Karpen requested Final Agency Decisions ("FADs") in her matters.

    a.     On January 8, 2018, Karpen requested a FAD for Agency Nos. 200J-0537-2017102369 and 200J-0537-2017104043.

     b.    On July 24, 2018, Karpen requested a FAD for Agency No. 200J-0537-2016100990.

     c.    On April 4, 2019, Karpen requested a FAD for Agency No. 200J-0537-2018101212.

19.    On January 17, 2020, Karpen appealed the FAD outcomes (Agency Nos. 200J-0537-2016100990, 200J-0537-2017102369, 200J-0537-2017104043, 200J-0537-2018101212) to the EEOC OFO, (OFO Appeal No. 2020002377).

20.    On July 19, 2021, the OFO issued a decision on Appeal No. 2020002377 (Agency Nos. 200J-0537-2016100990, 200J-0537-2017102369, 200J-0537-2017104043, 200J-0537-2018101212).

21.    On April 23, 2021, Karpen appealed the FAD outcomes to the EEOC OFO (OFO Appeal No. 2021002982) on subsequent EEO Complaints (Agency Nos. 200J-0537-2019101833, 200J-0537-2019104656, 200J-0537-2020103957). The OFO has yet to issue a decision on Appeal No. 2021002982.

22.    Venue in this district is proper under 28 U.S.C. § 1391(b) because all or a substantial portion of the unlawful employment practices occurred within this judicial district.

## **FACTUAL ALLEGATIONS**

23.    In 2009, Karpen joined the Jesse Brown VA Medical Center ("JBVAMC") in Chicago, IL as a Registered Nurse ("RN").

24.    Karpen has worked as an RN in the Outpatient Specialty Clinic since 2009.

25.    From 2011 to 2018, Karpen's first-line supervisor within the Outpatient Specialty Clinic was Jackie Thebaud ("Thebaud") (African American).

26.     From 2011 to 2018, Karpen's second-line supervisor within the Outpatient Specialty was Dana Beatty ("Beatty") (African American).

27.     For each year from 2011 to 2014, Karpen received annual performance ratings of "Highly Satisfactory."

**Karpen is Regularly Harassed by a Coworker and Participates in Protected Activity**

28.     In or about March 2014, Karpen met with Thebaud, Beatty, two other colleagues, and a National Nurses United representative.

29.     During the meeting, one of Karpen's colleagues, Sheneill Fitzpatrick ("Fitzpatrick") (African American), accused Karpen of being a racist.

30.     In a March 28, 2014, meeting, Fitzpatrick told attendees that Karpen was thinking (not saying) racial slurs about the African American nurses present.

31.     VA management did not reprimand or counsel Fitzpatrick for this baseless allegation.

32.     On or about April 8, 2014, Thebaud encountered Karpen in the EEO Director's office.

33.     Karpen was at the EEO office to meet with Rex Earl Jones III and obtain information about resolutions to the difficulties Karpen was encountering in the Specialty Clinic. Thebaud was at the EEO office to meet with Fitzpatrick for a separately scheduled meeting.

34.     On or about April 8, 2014, Karpen filed EEO Complaint Agency No. 200J-0537-2014102469.

35.     Karpen's EEO Complaint asserted non-sexual harassment on the basis of race and hostile work environment alleging an adverse action during a meeting on March 27, 2014, when Fitzpatrick accused Karpen of racism and Thebaud failed to address the accusation.

36. The assertion by Fitzpatrick was based on a preceding event where Fitzpatrick refused to enter an Engineering Work Order in the Veteran's Health Information System Technology Architecture ("VISTA") to repair clinic equipment.

37. Karpen stated all nurses were able to enter the Work Order; Thebaud agreed with Fitzpatrick's stance at the time of the disagreement. Karpen's assertion was later proved accurate.

38. On or about May 28, 2014, Karpen resolved EEO Complaint Agency No. 200J-0537-2014102469 through Alternate Dispute Resolution ("ADR") with Thebaud.

39. In or about August 2014, Fitzpatrick turned away a veteran seeking treatment from the Injection Clinic because the clinic had closed five minutes prior—the veteran arrived at 3:05pm and the clinic closed at 3:00pm.

40. The veteran had driven approximately sixty miles seeking treatment.

41. Karpen disagreed with Fitzpatrick's evaluation, stating that the veteran should be treated. Fitzpatrick and Thebaud spoke about this disagreement that afternoon.

42. The next day, Fitzpatrick accused Karpen of being a "bigot and a known liar" during a staff meeting.

43. To address the harassment, on or about August 26, 2014, Karpen initiated informal EEO counseling through Agency No. 200J-0537-2014104610, asserting a hostile work environment based on race and retaliation for prior EEO activity.

**Karpen Experiences Retaliation**

44. From 2014 to 2018, Karpen remained in her position as an RN in the Outpatient Specialist Clinic conducting similar job duties.

45.     From 2014 to 2018, the VA did not select Karpen for any of the at least thirteen (13) positions to which she applied.

46.     From 2014 to 2018, Thebaud decreased Karpen's performance rating from "Highly Satisfactory" to "Satisfactory".

47.     The Nursing Professional Standards Board ("NPSB") is an internal VA board that promotes RNs when they meet the Qualification Standards for the next grade.

48.     There are five (5) grades for RNs, Nurse I through Nurse V.

49.     The NPSB reviews Nurse I and Nurse II proficiency reports once supervisor submit them for their employees and determine whether the RNs are eligible for promotion.

50.     In or around 2016, the VA failed to promote Karpen from Nurse II to Nurse III despite a 63-page report on her work supporting the promotion.

**Karpen Applies for Different Positions at the VA**

51.     Between 2014 to 2018, Karpen applied for at least thirteen (13) job vacancies at the VA; she was not selected for a single vacancy.

**Vacancy No. 2014-18**

52.     Karpen applied for Vacancy No. 2014-18 (Nurse Educator) on or about July 14, 2014.

53.     Karpen met the qualifications for Vacancy No. 2014-18. Karpen included the following qualifications in her application for the role—approximately nineteen (19) years nursing experience; Master's degree in Nursing;  Clinical Nurse Leader ("CNL") national certification;  American Association of Colleges of Nursing ("AACN") national certification; was an awardee of the VA  National Nursing Education Initiative ("NNEI") scholarship that paid

for Karpen's Master of Science in Nursing – Clinical Nurse Leader ("MSN-CNL") degree in full; and professional experience working at a hospital seeking Magnet certification.

54.     The American Nurses Credentialing Center ("ANCC") grants Magnet certification to health care organizations that provide the best in nursing care, a positive practice environment for employees, and help shape the future of the nursing profession.

55.     Karpen was interviewed by a panel for Vacancy No. 2014-18.

56.     Karpen received an email notification on or about November 14, 2014, from Joyce Wyatt ("Wyatt"), Human Resources specialist, indicating that another candidate had been selected for the role.

57.     The Agency selected Joylin Anderson-Calhoun for Vacancy No. 2014-26.

58.     Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

59.     Mary Toles ("Toles") (African American), Chief Nurse, was the selecting official for Vacancy No. 2014-18.

60.     Toles was in Karpen's chain of command as her third-line supervisor. Toles supervised Beatty, who in turn, supervised Thebaud, Karpen's direct supervisor.

61.     Toles was aware of Karpen's EEO activity since about 2014 when Karpen filed an EEO complaint against Thebaud in April 2014.

**Vacancy No. 2014-26**

62.     Karpen applied for Vacancy No. 2014-26 (Utilization Nurse Manager) on or about July 21, 2014.

63.     Karpen met the qualifications for Vacancy No. 2014-26. Karpen included the following qualifications in her application for the role—Master's degree in Nursing; CNL national certification; AACN national certification; experience with Tricare; experience and knowledge of patient safety issues; experience delivering appropriate and timely services.

64.     Karpen attended an interview for the position.

65.     Karpen received an email notification on or about November 14, 2014, from Wyatt indicating another candidate had been selected for the role.

66.     The Agency selected RN Sheila Wright ("Wright") (African American) for Vacancy No. 2014-26.

67.     Wright did not hold a Master's degree at the time of selection.

68.     Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

69.     Toles (African American) was the approving official for Vacancy No. 2014-26.

70.     Toles was in Karpen's chain of command and was aware of Karpen's EEO activity since about 2014 when Karpen filed an EEO complaint against Thebaud in April 2014.

**Vacancy No. 2015-12**

71.     In 2015, the VA did not select Karpen for Vacancy No. 2015-12 (Registered Nurse, Utilization Management).

72.     The public posting for Vacancy No. 2015-12 was first posted in or about February 2015.

73.     Karpen applied for Vacancy No. 2015-12 on or about February 4, 2015.

74.     Karpen met the qualifications for Vacancy No. 2015-12 as posted in February 2015.  Karpen included the following qualifications in her application for the role: over twenty (20) years of experience; Bachelor of Science in Nursing; Master's degree in Nursing; Clinical Nurse Leader ("CNL") national certification; American Association of Colleges of Nursing ("AACN") national certification; multi-unit nursing experience; and interpersonal skills.

75.     Karpen attended two interviews for the position.

76.     No candidate was initially selected for Vacancy No. 2015-12.

77.     Karpen was not notified of non-selection.

78.     The VA reposted Vacancy No. 2015-12 in or around September 2015.

79.     The September 2015 announcement for Vacancy No. 2015-12 was identical to the February 2015 posting for the same vacancy. Only the open and close dates for the announcement had been changed.

80.     Karpen reapplied for the vacancy on or about September 9, 2015.

81.     Karpen was not interviewed for the reposted position.

82.     Karpen received an email notification on or about December 3, 2015, from Carolyn Cass, assistant Human Resources officer, indicating another candidate had been selected for the role.

83.     The Agency selected RN Yvonne Hopper (African American) for Vacancy No. 2015-12.

84.     Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

85.     Toles was the approving official for Vacancy No. 2015-12.

86.     Toles is in Karpen's chain of command and was aware of Karpen's EEO activity since about 2014 when Karpen filed an EEO complaint against Thebaud in April and August 2014.On or about December 17, 2015, Karpen requested additional information via email from Deborah Barker ("Barker") about Karpen's non-selection.

87.     Barker stated in an email, "It was determined post interviews no qualified candidates with recent Utilization Management experience was present so a second announcement was placed to broaden the area for internal and external applicants. Those applicants were received in a new review of the resumes was conducted utilizing the tool developed for this position. The top candidates from this announcement were interviewed and a selection was made of a candidate with recent extensive Utilization Management experience."

88.     Utilization Management experience was neither a required nor preferred qualification included in either of the February 2015 or September 2015 announcements.

**Vacancy No. 2015-21**

89.     Karpen applied for Vacancy No. 2015-21 (Registered Nurse, Veterans' Health Education Coordinator) on or about March 27, 2015.

90.     Karpen met the qualifications for Vacancy No. 2015-21.

91.     Karpen included the following qualifications in her application for the role: Service as a Commissioned Officer in the United States Army Reserve ("USAR"); Bachelor of Science in Nursing; Master's degree in Nursing; Clinical Nurse Leader ("CNL") national certification; Microsoft Office skills; and interpersonal skills.

92.     Karpen was interviewed by a panel comprised of several individuals.

93.     Karpen received an email notification on or about November 14, 2014, from Wyatt indicating another candidate had been selected for the role.

94.     The Agency selected RN Opokua B. Osei-Yeboah ("Osei-Yeboah") (Nigerian; younger than Karpen) for Vacancy No. 2015-21.

95.     Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

96.     Karpen and Osei-Yeboah have similar educational qualifications and credentials.

97.     Toles was the approving official for Vacancy No. 2015-21.

98.     Toles is in Karpen's chain of command and was aware of Karpen's EEO activity since about 2014 when Karpen filed an EEO complaint against Thebaud in April and August 2014.

**Vacancy No. 2015-51**

99.     Karpen applied for Vacancy No. 2015-51 (Registered Nurse, Community Health/Non-Institutional Care) on or about August 5, 2015.

100.     Karpen met the qualifications for Vacancy No. 2015-51.

101.     Karpen included the following qualifications in her application for the role: over five (5) years of experience with the specific population; Master's degree in Nursing; CNL national certification; AACN national certification; interpersonal skills; strong relationships with JBVA providers and departments; multi-unit nursing experience.

102.     Karpen received an email notification on or about December 3, 2015, from Cass indicating another candidate had been selected for the role.

103.     The Agency selected RN Chevon Washington-Brewer (African American) for Vacancy No. 2015-51.

12

104.     Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

105.     Toles was the approving official for Vacancy No. 2015-51.

106.     Toles is in Karpen's chain of command and was aware of Karpen's EEO activity since about 2014 when Karpen filed an EEO complaint against Thebaud in April and August 2014.

### Karpen's 2015 Decreased Performance Rating

107.     On November 3, 2015, Karpen received a "Satisfactory" performance rating for FY 2015, which was lower than the ratings she received each previous year from 2011 through 2014.

108.     A higher rating was warranted because of Karpen's consistent outstanding care for patients, her continued duty to the Podiatry clinic despite a Union contract violation by Thebaud, Karpen's continued dedication as a Neurology Nurse Care Manager despite miscommunications related to the job assignment and subsequent recission of the position, her efforts to update medication protocols to align with best practices, and her ongoing commitment to patient safety.

109.     Moreover, Thebaud and Beatty failed to give the Karpen credit for working as a Neurology Nurse Case Manager, even when the job had been rescinded by Lori Riley ("Riley"), Nurse Recruiter, and Thebaud following an unannounced meeting in Thebaud's office.

### Karpen Files EEO Complaint Agency No. 200J-0537-2016100990

110.     On December 1, 2015, Karpen initiated informal EEO counseling, asserting (1) Karpen was detailed to Podiatry by Thebaud against her Union contract, (2) her 2015

performance evaluation had dropped from "Highly Satisfactory" to "Satisfactory" for the reason of being detailed to the Podiatry clinic, and her performance evaluation had a line written indicating Thebaud did not promote or support nurses educated at the Master's degree level, and (3) Karpen's non-selection for Registered Nurse, Utilization Management Nurse (Vacancy No. 2015-12) asserting the non-selection was on the basis of race and reprisal for her prior protected activity.

111.    Karpen filed a formal EEO complaint on January 26, 2016 (Agency No. 200J-0537-2016100990), on the basis of race and reprisal for prior EEO activity.

### Vacancy No. 2016-32

112.    On August 31, 2016, the VA did not select Karpen for the position of Patient Safety Manager position (Vacancy No. 2016-32), to which she applied on or about June 7, 2016.

113.    Instead, the VA selected Meghan McLaughlin for the position.

114.    Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

115.    Toles was on the interview panel.

116.    Toles was in Karpen's chain of command and was aware of Karpen's EEO activity since about 2014 when Karpen filed an EEO complaint against Thebaud in April and August 2014 and January 2016, as well as naming Toles in her January 2016 EEO complaint.

### Karpen's 2016 Decreased Performance Rating and Denied Promotion

117.    On or about December 2, 2016, Karpen received a "Satisfactory" performance rating from Thebaud for Fiscal Year 2016, rather than "Highly Satisfactory."

118.     On or about December 12, 2016, Karpen responded to her performance rating with detailed 63-page document containing concise comments following the provisions of VA Form 10-2623, the proficiency form submitted into an employee's Official Personnel Folder ("eOPF").

119.     Karpen directly addressed all criteria necessary for promotion to Nurse III.

120.     Karpen also detailed her contributions to patient care, the nursing community at the VA, and other activities to include—full-time support to the neurology department as a case manager updated medication protocols to match industry best practices, a report on administration logs with a call to action for improvement, continuing education for on-staff nurses related to vaccine administration and charting, collaboration with the nurse's union, and several other activities intended to improve the VA's service.

121.     On December 12, 2016, Thebaud did not recommend Karpen for promotion to Nurse III and failed to submit the 63-page supporting documentation Karpen provided to the NPSB.

122.     On or about April 6, 2017, the NPSB denied Karpen's promotion to Nurse III.

123.     This denial was directly related to Thebaud's failure to submit Karpen's supporting documentation.

**Vacancy No. 2016-79**

124.     Karpen applied for Vacancy No. 2016-79 (Registered Nurse, Clinic Nurse Leader) on or about October 31, 2016.

125.     Karpen met the qualifications for Vacancy No. 2016-79.

126.     Karpen included the following qualifications in her application for the role— Master's degree in Nursing; CNL national certification; AACN national certification; eight (8)

15

years of experience with the unit's patients; interpersonal skills; strong relationships with JBVA providers and departments; multi-unit nursing experience.

127.    Karpen was not interviewed.

128.    Karpen received an email notification on or about January 23, 2017, indicating another candidate had been selected for the role.

129.    RN Opokua Osei-Yeboah (Nigerian; younger than Karpen) was selected for Vacancy No. 2016-79. Osei-Yeboah is the same nurse selected for Vacancy No. 2015-21 (Registered Nurse, Veterans' Health Education Coordinator).

130.    Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

131.    Toles and Norma Dorsey ("Dorsey") (African American) were the selecting officials for Vacancy No. 2016-79.

132.    Toles was in Karpen's chain of command and was aware of Karpen's EEO activity since about 2014 when Karpen filed an EEO complaint against Thebaud in April and August 2014 and January 2016, as well as naming Toles in her January 2016 EEO complaint.

**Karpen Files EEO Complaint Agency No. 200J-0537-2017102369**

133.    On or about March 30, 2017, Karpen initiated informal EEO counseling asserting (1) age discrimination, reprisal on the basis of prior EEO activity, and race discrimination in relation to her application for Registered Nurse, Veterans' Health Education Coordinator (Vacancy No. 2017-16), (2) failure of Thebaud in submitting Karpen's 63-page document outlining her qualifications for promotion to the NPSB as reprisal for Karpen's 2014 EEO

Complaint, and (3) non-selection for the Registered Nurse Transfer Coordinator (Vacancy No. 2017-34) position on the basis of age, race, and reprisal.

134.    Karpen withdrew complaints (1) and (3) on or around August 16, 2017.

135.    Complaint (2) was submitted to informal counseling. This informal counseling reached no resolution.

136.    Karpen filed a formal EEO complaint on June 19, 2017 (Agency No. 200J-0537-2017102369), on the basis of age, race, and reprisal for prior EEO activity (ref. Agency No. 200J-0537-2016100990). This formal complaint comprised the same assertions from the March 30, 2017, informal counseling submission to EEO.

137.    On or about July 1, 2017, Human Resources entered Karpen's performance rating into her electronic eOPF but failed to upload Karpen's NPSB supporting documentation.

**Karpen Files EEO Complaint Agency No. 200J-0537-2017104043**

138.    On or about July 13, 2017, Karpen initiated informal EEO counseling asserting Thebaud did not recommend Karpen for promotion through the NPSB by failing to provide the 63-page document Karpen had compiled to outline eligibility for promotion. This failure resulted in the NPSB denying promotion to Karpen. Additionally, the complaint asserted that Karpen's proficiency was improperly entered into her electronic eOPF file without her concise comments related to Thebaud's rating of Karpen.

139.    Karpen filed a formal EEO complaint on or about August 7, 2017 (Agency No. 200J-0537-2017104043), on the basis of reprisal for her prior EEO activity. This formal complaint was based on Karpen's July 13, 2017, claims regarding Thebaud's failure to provide the NPSB with 63-page document Karpen had compiled to outline eligibility for promotion,

which resulted in Karpen's non-selection for Nurse III, as well as improper documentation of Karpen's proficiency in eOPF.

140.　　On or about August 21, 2017, the Agency ORM consolidated Agency Nos. 200J-0537-2017104043 and 200J-0537-2017102369 for case processing and included: (1) Thebaud's decision not to recommend Karpen for promotion on or about December 12, 2016; (2) the NPSB's denial of Karpen's promotion to Nurse III on or about April 6, 2017; and (3) HR's omission of Karpen's supporting documentation in her proficiency evaluation on or about July 12, 2017.

141.　　On or about November 7, 2017, Karpen became aware that HR did not include NPSB criteria reviewed for promotional consideration with her Board Action slip in eOPF.

### Vacancy No. 2017-70

142.　　Karpen applied for Vacancy No. 2017-70 (Registered Nurse, Patient Safety Nurse Specialist) on or about August 22, 2017.

143.　　Karpen met the qualifications for Vacancy No. 2017-70.

144.　　Karpen included the following qualifications in her application for the role—Master's degree in Nursing; CNL national certification; AACN national certification; leadership and interpersonal skills.

145.　　Karpen received an email notification on or about November 22, 2017, indicating another candidate had been selected for the role.

146.　　RN Claire Gangware (Caucasian; younger than Karpen) was selected for Vacancy No. 2016-79.

147.    Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

148.    Phyllis Mahn ("Mahn") and Barker were the selecting officials.

149.    Toles was the approving official.

150.    Mahn, Barker, and Toles were all aware of Karpen's prior EEO activity from 2014-2017 at the time of the decision.

**Karpen Files EEO Complaint Agency No. 200J-0537-2018101212**

151.    On December 4, 2017, Karpen initiated informal EEO counseling.

152.    On January 23, 2018, Karpen filed a formal EEO complaint (Agency No. 200J-0537-2018101212) on the basis of reprisal for EEO activity. This EEO complaint was based upon non-selection for Vacancy Nos. 2017-70 (Registered Nurse, Patient Safety Nurse Specialist), 2018-23 (Ethics Coordinator), 2018-36 (Nurse Practitioner, Home-Based Primary Care), 2018-37 (Nurse Practitioner, Auburn Gresham CBOC), 2018-26 (Utilization Management Nurse), and 2018-53 (Registered Nurse, Quality, Safety, and Value).

153.    As of May 2, 2018, Karpen had neither received nor signed a Board Action Slip providing proficiency evaluation, reasoning, recommendations, and/or remarks for improvement for 2017. She also had not received a copy of her 2017 proficiency rating.

154.    On April 14, 2018, Karpen became aware that she was not issued a cash award for her 2016 proficiency evaluation, which were the same documents in her eOPF for the 2017 rating for which she did receive a cash award.

**Vacancy No. 2018-23**

155.    Karpen applied for Vacancy No. 2018-23 (Registered Nurse, Ethics Consultation Coordinator) on or about May 25, 2018.

156.    Karpen met the qualifications for Vacancy No. 2018-23.

157.    Karpen included the following qualifications in her application for the role—Master's degree in Nursing; CNL national certification; AACN national certification.

158.    Karpen was not interviewed for this vacancy.

159.    Karpen received an email notification on or about August 17, 2018, indicating another candidate had been selected for the role.

160.    RN Thomas Sifner ("Sifner") was selected for Vacancy No. 2018-23.

161.    Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

162.    Karpen was more qualified than Sifner for this role because Karpen had already obtained her MSN. Sifner held a Masters in Business Administration, but not an MSN.

163.    Robert G. Buckley ("Buckley") was the selecting official.

164.    Toles was the approving official.

165.    Toles was aware of Karpen's prior EEO activity at the time of the decision. Karpen later learned via an email from Buckley that Karpen's application was never sent to Buckley for consideration of the candidates to interview.

**Vacancy Nos. 2018-37 (and 2019-34)**

166.    Karpen applied for Vacancy No. 2018-37 (Nurse Practitioner, Auburn Gresham Clinic) on or about June 25, 2018.

20

167.    Karpen met the qualifications for Vacancy No. 2018-37.

168.    Karpen included the following qualifications in her application for the role—Master's degree in Nursing; CNL national certification; AACN national certification.

169.    Karpen was not offered an interview for vacancy 2018-37.

170.    On or about September 6, 2018, Karpen received an email from Lori Riley stating Karpen had not been selected. Karpen emailed Riley in HR about having not been interviewed following this email.

171.    On or about September 17, 2018, Karpen was contacted with an offer to interview.

172.    On or about September 21, Karpen interviewed with three Auburn Gresham Community Based Outpatient Clinic ("AG CBOC") staff.

173.    On or about October 2, 2018, Karpen was notified by email that no selection had been made. Barker was the selecting official.

174.    On or about October 18, 20218, Vacancy No. 2018-37 was cancelled.

175.    In or about early 2019, the same position description was reposted under Vacancy No. 2019-34.

176.    Karpen was interviewed by a panel that included Toni Majied (African American) ("Majied").

177.    Karpen received an email notification on or about September 6, 2019, indicating another candidate had been selected for the role.

178.    Laynie Klawer was selected for Vacancy No. 2019-34.

179.     Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

180.     Majied and Kimba Brown ("Brown") were the selecting officials. Both Majied and Brown were within Toles's chain of command.

181.     Toles, who Karpen named in her prior EEO complaints from 2016-2018 and who was aware of Karpen's EEO activity, had influence related to the decision.

**Vacancy No. 2018-26**

182.     Karpen applied for Vacancy No. 2018-26 (Utilization Management Nurse) on or about July 13, 2018.

183.     Karpen met the qualifications for Vacancy No. 2018-26.

184.     Karpen included the following qualifications in her application for the role— Master's degree in Nursing; CNL national certification; AACN national certification.

185.     Karpen was not offered an interview for this vacancy.

186.     Karpen received an email notification on or about October 3, 2018, indicating another candidate had been selected for the role.

187.     Janis Pullins-Brown (African American), Crystal Priest (African American), and Candy Hambrick (African American) were selected for Vacancy No. 2018-26.

188.     Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

189.     Phyllis Evans ("Evans") and Brown were the selecting officials.

190.     Evans was a Nurse Manager in Toles's chain of command.

191.    Toles, who Karpen named in her prior EEO complaints from 2016-2018 and who was aware of Karpen's EEO activity, had influence related to the decision.

**Vacancy No. 2018-36**

192.    Karpen applied for Vacancy No. 2018-36 (Nurse Practitioner, Home-Based Primary Care) on or about June 25, 2018.

193.    Karpen met the qualifications for Vacancy No. 2018-36.

194.    Karpen included the following qualifications in her application for the role: Master's degree in Nursing; CNL national certification; AACN national certification.

195.    Karpen was not offered an interview for this vacancy.

196.    Karpen received an email notification from Carlos Soria on or about October 3, 2018, indicating another candidate had been selected for the role.

197.    RN Jeanett Atanga (African American; approximately 40 years old) was selected for Vacancy No. 2018-36.

198.    Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

199.    Evans and Barker were the selecting officials.

200.    Barker was aware of Karpen's race, approximate age, and prior EEO activity at the time of the decision. On October 4, 2018, Karpen amended Agency No. 200J-0537-2018101212 to include her non-selection for Vacancy Nos. 2018-26 and 2018-36.

**Vacancy No. 2018-53**

201.    Karpen applied for Vacancy No. 2018-53 (Registered Nurse, Quality, Safety and Value) on or about August 30, 2018.

23

202.    Karpen met the qualifications for Vacancy No. 2018-53.

203.    Karpen included the following qualifications in her application for the role—Master's degree in Nursing; CNL national certification; AACN national certification.

204.    Karpen was not offered an interview for this vacancy.

205.    Karpen received an email notification on or about November 27, 2018, from Lori Riley indicating another candidate had been selected for the role.

206.    RN Rhoda Rancap (Asian-American/Pacific Islander) was selected for Vacancy No. 2018-53.

207.    Given Karpen's experience as an RN, education, certifications, and years of service with the VA, she does not believe the selected candidate could be more qualified than her for the position.

208.    Karpen and Rancap have similar educational qualifications and credentials..

209.    Mahn, Barker, and Kelly were the selecting officials.

210.    Barker was aware of Karpen's race, approximate age, and prior EEO activity at the time of the decision. On November 28, 2018, amended Agency No. 200J-0537-2018101212 to include her non-selection for Vacancy No. 2018-53.

## COUNT I

### Title VII
### 42 U.S.C. §2000e, *et seq.*
### Discrimination Based on Race

211.    Karpen incorporates the allegations in the forgoing paragraphs as though alleged herein.

212.    Karpen is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

213.    The VA is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

214. Karpen is Caucasian.

215. The VA violated 42 U.S.C. §2000e-2, *et seq*., by discriminating against Karpen based on her race when it engaged in the following actions:

    a.  The Agency did not select Karpen for vacancy announcements, including:

        i.  Vacancy No. 2014-18 (Agency No. 200J-0537-2016100990)

        ii.  Vacancy No. 2014-26 (Agency No. 200J-0537-2016100990)

        iii.  Vacancy No. 2015-12 (Agency No. 200J-0537-2016100990)

        iv.  Vacancy No. 2015-21 (Agency No. 200J-0537-2016100990)

        v.  Vacancy No. 2015-51 (Agency No. 200J-0537-2016100990)

        vi.  Vacancy No. 2016-79 (Agency No. 200J-0537-2016100990)

        vii.  Vacancy No. 2018-23 (Agency No. 200J-0537-2018101212)

        viii.  Vacancy No. 2018-26 (Agency No. 200J-0537-2018101212)

        ix.  Vacancy No. 2018-36 (Agency No. 200J-0537-2018101212)

        x.  Vacancy No. 2018-37 (Agency No. 200J0537-2018101212)

        xi.  Vacancy No. 2018-53 (Agency No. 200J-0537-2018101212)

    b.  The Agency awarded Karpen a lower performance rating when it rated Karpen as "Satisfactory" in FY2015, FY2016, and FY2017.

    c.  The Agency failed to include NPSB criteria for promotional consideration in Karpen's 2017 Board Action slip.

    d.  The Agency failed to promote Karpen to Nurse III in 2017, 2019, and 2020.

216. The disparate treatment Karpen faced as compared to those of her colleagues with her repeated non-selection, repeated denial of promotion, and the VA's failure to upload or submit documentation necessary for promotion, demonstrate a causal link for the adverse actions and race discrimination.

217. The VA cannot demonstrate a legitimate, nondiscriminatory reasons for denying Karpen dozens of positions for which she was qualified, as well as promotions, despite her qualifications as a Nurse Practitioner, and failure to upload or submit documentation necessary for promotion.

218. The Agency's reasons for denying Karpen positions for which she was qualified, as well as promotions, despite her qualifications as a Nurse Practitioner, and failure to upload or submit documentation necessary for promotion, are pretextual.

219. Karpen sustained monetary and non-monetary damages as a result of the VA's illegal conduct.

220. For the VA's unlawful discrimination, Karpen is entitled to general and special damages, economic damages, compensatory damages, reasonable attorney's fees, as well as her costs and any other legal and/or equitable relief that this Court deems appropriate

## COUNT II

### Title VII
### 42 U.S.C. §2000e, *et seq*.
### Retaliation Based on Protected Conduct

221. Karpen incorporates the allegations in the forgoing paragraphs as though alleged herein.

222. Karpen is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

223. The VA is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

224. Karpen engaged in protected activity when she initiated the informal EEO process and filed the following EEO formal complaints:

    a. January 26, 2016: Agency No. 200J-0537-2016100990

    b. June 19, 2017: Agency No. 200J-0537-2017102369

    c.   August 7, 2017: Agency No. 200J-0537-2017104043

    d.   January 23, 2018: Agency No. 200J-0537-2018101212

225.    The VA retaliated against Karpen because of her protected conduct when it engaged in the following actions:

    a.   The Agency did not select Karpen for vacancy announcements, including Vacancy Nos.:

        i.   Vacancy No. 2014-18 (Agency No. 200J-0537-2016100990)

        ii.   Vacancy No. 2014-26 (Agency No. 200J-0537-2016100990)

        iii.   Vacancy No. 2015-12 (Agency No. 200J-0537-2016100990)

        iv.   Vacancy No. 2015-21 (Agency No. 200J-0537-2016100990)

        v.   Vacancy No. 2015-51 (Agency No. 200J-0537-2016100990)

        vi.   Vacancy No. 2016-79 (Agency No. 200J-0537-2016100990)

        vii.   Vacancy No. 2016-32 (Agency No. 200J-0537-2016100990)

        viii.   Vacancy No. 2017-70 (Agency No. 200J-0537-2018101212)

        ix.   Vacancy No. 2018-23 (Agency No. 200J-0537-2018101212)

        x.   Vacancy No. 2018-26 (Agency No. 200J-0537-2018101212)

        xi.   Vacancy No. 2018-36 (Agency No. 200J-0537-2018101212)

        xii.   Vacancy No. 2018-37 (Agency No. 200J0537-2018101212)

        xiii.   Vacancy No. 2018-53 (Agency No. 200J-0537-2018101212)

    b.   The Agency awarded Karpen a lower performance rating than in years preceding her protected activity when it rated Karpen as "satisfactory" in FY2017.

    c.   The Agency failed to include NPSB criteria for promotional consideration in Karpen's 2016 Board Action slip.

    d.   The Agency failed to promote Karpen to Nurse Level 3 in 2017, 2019, and 2020.

226.    The JBVAMC management—Toles, Thebaud, Beatty, and Barker—were aware of Karpen's protected conduct.

227.    The JBVAMC management—Toles, Thebaud, Beatty, and Barker—were responsible for the above outlined adverse actions.

228.    The temporal proximity between Karpen's protected conduct and the adverse actions taken against her by the Agency, demonstrate retaliation and its causal link to protected conduct.

229.    The VA's stated and forthcoming reasons for treating Karpen in a disparate manner are pretextual.

230.    Karpen sustained monetary and non-monetary damages as the result of the VA's illegal conduct.

231.    For the VA's unlawful retaliation, Karpen is entitled to general and special damages, economic damages, compensatory damages, reasonable attorney's fees, as well as her costs and any other legal and/or equitable relief that this Court deems appropriate.

## COUNT III

**ADEA**
**29 U.S.C. § 621, *et seq.***
**Age Discrimination**

232.    Karpen hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

233.    Karpen is over forty (40) years old and within a protected class under ADEA.

234.    Karpen's performance was exceptional.

235.    The ADEA at U.S.C § 621(a)(1) makes it unlawful for an employer to discharge any individual or otherwise discriminate against any individual

236.    The VA violated U.S.C § 621, *et seq.*, by discriminating against Karpen based on her age when it did not select Karpen for vacancy announcements, including:

    a.   Vacancy No. 2016-32 (Agency No. 200J-0537-2016100990)

    b.   Vacancy No. 2018-23 (Agency No. 200J0537-2018101212)

    c.   Vacancy No. 2018-26 (Agency No. 200J-0537-2018101212)

    d.   Vacancy No. 2018-36 (Agency No. 200J-0537-2018101212)

    e.   Vacancy No. 2018-37 (Agency No. 200J0537-2018101212)

    f.   Vacancy No. 2018-53 (Agency No. 200J-0537-2018101212)

237.    The VA has no legitimate business reason for Karpen's repeated non-selection for positions for which she was qualified.

238.    The VA' stated reasons are pretextual.

239.    Karpen has exhausted her administrative remedies.

240.    Karpen has sustained damages as the result of the VA's illegal discrimination in violation of the ADEA, including, but not limited to, economic damages, damage to her career, and emotional, mental, and physical distress and anxiety.

## COUNT IV

### ADEA
### 29 U.S.C. § 621, *et seq.*
### Retaliation Based on Protected Conduct

241.    Karpen hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

242.    At all relevant times herein, the ADEA was in full force and effect.

243.    Karpen engaged in protected activity when she initiated the informal EEO process and filed EEO formal complaints:

    a.   January 26, 2016: Agency No. 200J-0537-2016100990

    b.   June 19, 2017: Agency No. 200J-0537-2017102369

    c.   August 7, 2017: Agency No. 200J-0537-2017104043

      d.   January 23, 2018: Agency No. 200J-0537-2018101212

244.    The VA retaliated against Karpen because of her protected conduct when it did not select Karpen for vacancy announcements, including:

      a.   Vacancy No. 2016-32 (Agency No. 200J-0537-2016100990)

      b.   Vacancy No. 2018-23 (Agency No. 200J-0537-2018101212)

      c.   Vacancy No. 2018-26 (Agency No. 200J-0537-2018101212)

      d.   Vacancy No. 2018-36 (Agency No. 200J-0537-2018101212)

      e.   Vacancy No. 2018-37 (Agency No. 200J0537-2018101212)

      f.   Vacancy No. 2018-53 (Agency No. 200J-0537-2018101212)

245.    The JBVAMC management—Toles and Barker—were aware of Karpen's protected conduct.

246.    The JBVAMC management—Toles and Barker—were responsible for the above outlined adverse actions.

247.    The temporal proximity between Karpen's protected conduct and the adverse actions taken against her by the Agency, demonstrate retaliation and its causal link to protected conduct.

248.    The VA's stated and forthcoming reasons for treating Karpen in a disparate manner are pretextual.

249.    Karpen sustained monetary and non-monetary damages as the result of the VA's illegal conduct.

250.    For the VA's unlawful retaliation, Karpen is entitled to general and special damages, economic damages, compensatory damages, reasonable attorney's fees, as well as her costs and any other legal and/or equitable relief that this Court deems appropriate.

## **PRAYER FOR RELIEF**

Based on the forgoing, Karpen respectfully requests that she be awarded the following:

a.  Economic damages for lost compensation and damages to Karpen's career;

b.  Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damage;

c.  Judgment declaring the employment practices of Defendant alleged herein to be unlawful;

d.  Reasonable costs and experts' and attorney's fees; and

e.  Any other such relief that the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Karpen requests a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,


/s/ R. Scott Oswald
R. Scott Oswald, Esq.
Michael L. Vogelsang, Jr. (*pro hac vice forthcoming*)
The Employment Law Group, P.C.
1717 K Street NW, Suite 1110
Washington, DC 20006
(202) 261-2818
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
mvogelsang@employmentlawgroup.com
ATTORNEYS FOR PLAINTIFF